Fred W. COLBY, Appellant,

v.

SUN OIL COMPANY et al., Appellees.

No. 12925.

Court of Civil Appeals of Texas.

Galveston.

March 8, 1956.

Rehearing Denied March 29, 1956.

Hightower & Wheat and Thos. A. Wheat, Liberty, for appellant.

Orgain, Bell & Tucker and Will E. Orgain, Beaumont, Jas. L. Shepherd, Jr., and Baker, Botts, Andrews & Shepherd, Houston, and Joiner Cartwright, Chas. F. Heidrick and Jack C. Hardy, Beaumont, for appellees Sun Oil Co. and Pan American Production Co.

HAMBLEN, Chief Justice.

This suit was instituted in the District Court of Chambers County by appellant. The suit was in trespass to try title to recover an undivided five-eighths interest in and to the minerals under Section 117 of the H. T. & B. Ry. Co. Survey in Chambers County, Texas, and, in the alternative, for judgment determining that a certain oil, gas and mineral lease covering such land had expired and terminated by virtue of the occurrence of the special limitation upon which the leasehold estate was granted. Defendants in the trial court were Sun Oil Company and Pan American Production Company. The case was submitted to the court without a jury upon an agreed statement of facts, upon which the court rendered judgment denying to appellant all relief sought by him.

The facts material to this appeal are entirely undisputed and may be stated as follows: On July 21, 1942, Walter Virnau and wife, as lessors, executed an oil, gas and mineral lease upon the property involved to John O. Banks, as lessee. Banks assigned the leasehold estate thereby created to appellees. Appellant by proper conveyances acquired an undivided five-eighths interest in the minerals under the land subject to the lease. The rights of the parties to this litigation are determined by paragraphs 2, 4, and 5 of such lease, the material portions of which provide as follows:

"2. Subject to other provisions herein contained, this lease shall remain in force for a term of Seven years from this date, called primary term, and as long thereafter as oil, gas or other mineral is produced from said land, or as long thereafter as Lessee shall conduct drilling or re-working operations thereon with no cessation of more than sixty consecutive days until production results, and if production results, so long as any such mineral is produced.

\* \* \* \* \* \*

"4. If operations for drilling a well shall not be commenced on said land on or before one year from the date hereof, this lease shall terminate as to both parties, unless on or before such anniversary date Lessee shall pay or tender to Lessor or to Lessor's credit in First National Bank, at Beaumont, Texas, (which bank and its successors are Lessor's agent, and shall continue as depository for rentals payable hereunder, regardless of the changes in ownership of said land or the rentals) the sum of Six Hundred Forty and no/100 Dollars ($640.00), herein called rental, which shall extend for twelve months the time within which such operations may be commenced. In like manner and upon like payments or tenders annually the commencement of such operations may be further deferred for successive periods of

twelve months each during the primary term. * * *. The down cash payment is consideration for this lease according to its terms and shall not be allocated as mere rental for a period. Operations hereunder shall be deemed to be commenced when the first material is placed on the ground.

"5. If at any times during the primary term and prior to discovery of oil or gas on said land lessee shall drill a dry hole or holes thereon, or if at any time or times during the primary term and after discovery of oil or gas the production thereof should cease from any cause, this lease shall not terminate if on or before any rental paying date next ensuing after the expiration of three months from the date of completion of dry hole or cessation of production, Lessee commences additional drilling or re-working operations or commences or resumes the payment or tender of rentals."

Delay rentals provided for in paragraph 4 were paid by appellees for each rental paying date up to and including July 7, 1947. On April 30, 1948, appellees began drilling operations on the land, which continued until a well was completed and abandoned as a dry hole on May 29, 1948. No rental was paid or tendered by appellees on July 21, 1948. On December 6, 1948, appellees began drilling operations on the land, which continued until a well was completed as a producing well in January of 1949. Such production has been continuous since the completion of such well.

Appellant attacks the judgment adverse to him in two points of error. By his first point, he contends that the lease by its own terms provided that upon the completion of a dry hole or holes the lease would terminate unless on or before the next rental paying date next ensuing after the expiration of three months from the date of the completion of the dry hole the lessee commenced additional drilling operations or resumed payment of rentals and since there was no rental paying date next ensuing after the expiration of three months from the date of the completion of the dry hole the lease terminated under its own terms upon the completion of the dry hole. By his second point, appellant contends that the lease terminated by its own limitations on July 21, 1948 due to the failure of appellees either to commence drilling operations on or before said date and subsequent to the completion of the dry hole on May 29, 1948, or to pay delay rentals on or before July 21, 1948, as provided in said lease. For reasons which we will undertake to state, we conclude that neither of appellant's points is well taken and that both must be overruled.

Considering appellant's points in inverse order, we are unable to reconcile his argument in support of his second point with our own understanding of the nature of determinable fee estates which both litigants concede that this lease creates. The rationale of his argument is disclosed by the following quotation from his brief: "Strictly construing Paragraph 5, which is the dry hole clause of the lease in this case, the only privilege conferred upon Lessees, the Appellees herein, to resume the payment of rentals was where there was a rental paying date next ensuing after the expiration of three months from the date of the completion of the dry hole. There was no such rental paying date, therefore, strictly construing this lease according to the literal terms of the language used, Defendants, the Lessees and Appellees herein, did not have the privilege of continuing the life of the lease by either commencing additional drilling or reworking operations or paying rentals.

"Notwithstanding that, it was the interpretation of the Plaintiff herein, of the lease, that Lessees did have that privilege of either commencing additional drilling operations, or paying the rental on the rental paying date immediately ensuing after the date of the completion of the dry hole * * *."

It is our understanding that a determinable fee estate or any estate granted upon a special limitation terminates automatically upon the occurrence of the event which constitutes the special limitation as expressed in the grant. This terminative

effect is independent of the will of the grantor or grantee and cannot be waived or avoided by acquiescence. Guerra v. Chancellor, Tex.Civ.App., 103 S.W.2d 775, writ refused. As we see it, if the provisions of paragraph 5 of the lease, which appellant refers to as the "dry hole clause," constitute a special limitation, and if the event provided for has occurred, the termination of the estate granted is automatic, instantaneous and independent of any interpretation which appellant might place or be willing to place thereon. The propriety of the judgment of the trial court appears to us to depend entirely upon the merit or lack thereof in appellant's first point.

We think appellant's first point is without merit for the following reasons: Paragraph 2 of the lease, standing alone, evidences a grant indefeasible for the primary term of seven years and if oil, gas or other mineral be produced within such primary term indefeasible thereafter so long as such production continues. Such a grant has been held to create a determinable fee. Texas Co. v. Davis, 113 Tex. 321, 254 S.W. 304, 113 Tex. 321, 255 S.W. 601; Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27.

■ Paragraph 4 of the lease provides for termination of the estate granted if operations for drilling a well shall not be commenced on the land on or before one year from date of the lease unless on or before such anniversary date lessee should pay or tender a money rental as therein specified. It provides for delay in the commencement of such operations for successive periods of twelve months during the primary term by like payments or tenders of such specified money rental. Since these provisions impose no obligation on lessees either to commence drilling a well or to pay the delay rental, they are held to be consistent with the construction of the lease as creating a determinable fee estate. 31-A Tex.Jur., page 285, Sec. 161.

■ ■ The commencement of drilling by lessees on April 30, 1948, and the continuation thereof until completion of the dry hole on May 29, 1948, renders it impossible for the event constituting the special limitation provided for in paragraph 4 to occur and therefore, in so far as the provisions of paragraph 4 are concerned, makes the estate indefeasible during the primary term of seven years. Texas Co. v. Davis, supra; 31-A Tex.Jur., page 264, Sec. 153. Completion of the dry hole would not by itself extend the estate beyond the primary term because of the absence of production. The estate could not be extended beyond the primary term by the payment of further delay rentals because the commencement of drilling renders the provision for the payment of delay rentals inoperative. Tennant v. Matthews, Tex. Civ.App., 19 S.W.2d 1115, writ refused. The estate could be extended beyond the primary term of seven years by virtue of actual production of oil, gas or other mineral before the end of such primary term. This condition has been met by the commencement on December 5, 1948, and the completion within the primary term of a producing well, production from which has since continued. In so far as paragraphs 2 and 4 are concerned, therefore, lessees are vested with an estate subject to no special limitation other than the cessation as defined in the lease of the production of oil, gas or other minerals.

The determination of the rights of these litigants is dependent, therefore, and in our opinion solely dependent upon the proper construction and application of paragraph 5 of the lease to the undisputed facts in this record. That paragraph has been quoted in full hereinabove.

■ Appellant's argument referable to the proper construction and application of paragraph 5 to the facts in this case is two-fold. First, he takes the primary position that by the plain and unambiguous terms of the paragraph the lease terminated by its own terms upon the completion of the dry hole at a time when there was no rental paying date next ensuing after the expiration of three months from the date of the completion of the dry hole. It will

be seen that the dry hole, drilling of which was commenced on April 30, 1948, was completed and abandoned on May 29, 1948, a period of 51 days before the next rental paying date. It will further be seen that the lease provided for no rental paying date "next ensuing after the expiration of three months from the date of completion" of such dry hole. Appellant argues, therefore, that since the condition which must be fulfilled to extend the term of the lease cannot be met, the lease automatically terminates. The error which we see in appellant's argument rests in his contention that the words "shall not terminate if" as used in paragraph 5 are identical in meaning and equivalent in operative effect with the words "shall terminate unless." He concludes, therefore, that since the condition predicated upon the word "unless" cannot be fulfilled, the only effect of the paragraph is to say that the lease *shall terminate*. It appears to us that appellant imputes a meaning to the words employed in paragraph 5 which is directly opposite in operative effect to that which the words express. The words employed are "shall not terminate if." Therefore, when it is considered that the condition predicated on the word "if" cannot occur, the effect of the paragraph is to say that the lease *shall not terminate*. The only reasonable construction which we see that can be placed upon paragraph 5 is to say that it is completely without application under the facts in this record. (Emphasis ours.)

Appellant's secondary argument under his first point is that the wording of paragraph 5 is ambiguous and capable of two interpretations or constructions. He, therefore, contends that since the lease was prepared by the appellees, it should be construed most strongly against them and in favor of the appellant and should be so construed as to effect a special limitation automatically terminating the estate granted. In support of his argument under this secondary position, appellant cites 31-A Tex.

Jur., page 178, Sec. 108, and a long line of cases setting forth the general rule that mineral leases are construed more strongly against the lessee and in favor of the lessor. We do not consider the authorities cited by appellant to be applicable to the present case for the reason that none of such authorities have to do with the construction of a forfeiture or limitation clause of a grant. The general rule that mineral leases are construed more strongly against the lessee and in favor of the lessor does not apply or extend to the construction of special limitations or forfeiture provisions. On the other hand, the applicable rule is that which states that forfeitures are not favored and will be decreed only under specific and clear provisions therefor. We do not consider the provisions of paragraph 5 of the lease to be ambiguous. On the other hand, we think that under the undisputed facts of this record, the clear language of the paragraphs shows that it has no application. If, however, it be considered that it is in any manner ambiguous, then we say that under the authorities as we understand them it must be construed as not creating a special limitation terminating the estate granted. We think that the following authorities lend sufficient support to this conclusion: Decker v. Kirlicks, 110 Tex. 90, 216 S.W. 385; Knight v. Chicago Corporation, 144 Tex. 98, 188 S.W.2d 564; Ryan v. Kent, Tex. Com.App., 36 S.W.2d 1007; Waggoner Estate v. Sigler Oil Co., supra; Cowden v. Broderick & Calvert, 131 Tex. 434, 114 S.W.2d 1166, 117 A.L.R. 61; Humble Oil & Refining Co. v. Davis, Tex.Com.App., 296 S.W. 285; Wisdom v. Minchen, Tex. Civ.App., 154 S.W.2d 330; McCallister v. Texas Co., Tex.Civ.App., 223 S.W. 859, writ refused.

For the reasons stated, we are of the opinion that the trial court correctly concluded that the lease here involved is in full force and effect and properly denied to appellant the relief sought by him. That judgment is accordingly affirmed.