Scott **CARGILE** et al., Appellants,

v.

E. F. **CARTER** et al., Appellees.

No. 7133.

Court of Civil Appeals of Texas.

Texarkana.

July 7, 1959.

Rehearing Denied July 28, 1959.

Harkness & Friedman, Harry B. Friedman, Texarkana, for appellant.

Joe McCasland, Jefferson, Woodrow H. Edwards, Mt. Vernon, for appellee.

FANNING, Justice.

Scott Cargile, W. N. Harkness and Harry B. Friedman sued E. F. Carter, W. E. Carter and Merle Carter in trespass to try title for a tract of land in the Wm. F. Young Survey in Cass County, Texas, which the record shows contained 78 acres of land, more or less. Trial was to the court without a jury and a take-nothing judgment was rendered against plaintiffs and judgment was rendered for defendants W. E. Carter and wife, Merle Carter, quieting their title to said land. Plaintiffs have appealed.

The trial court filed findings of fact and conclusions of law as follows:

"Findings of Fact

"1. The parties have stipulated in this cause, and I so find, that E. F. Carter is the common source of title. It has also been stipulated by the parties, and I so find, that E. F. Carter at the time and before the filing of this suit had parted with his title to the land described in the plaintiffs' original petition before the filing of this suit, and that he has been deceased for some four or five years preceding filing of said suit. Plaintiffs Scott Cargile, W. N. Harkness and Harry Friedman have never had actual possession of the land described in plaintiffs' original petition.

"2. Plaintiffs claim no title to, or right of possession of, the land described in plaintiffs' original petition, except such title and right of possession as was acquired in a previous suit between W. E. Carter, one of the defendants herein, against Scott Cargile, in cause No. 14,669, District Court of Cass County, Texas. The judgment roll in the former suit, including the judgment, verdict of the jury, plaintiffs' original petition and defendants' original answer, clearly reflect that the former suit was only a boundary suit.

"3. The judgment roll in the former suit clearly reflects that title to defendant Carter's land (he being plaintiff in the former suit) in the William F. Young Survey, Cass County, Texas, was not in dispute and neither was the land belonging to Scott Cargile in the BBB and CRR Survey, same county, in dispute, but only the boundary line between the respective tracts was in dispute and was settled in said suit.

"4. Plaintiff, Scott Cargile, when he and his wife were defendants in the first suit, never expressly claimed title to the Carter land, but only claimed title to such land as was described in 'their deed.' Their deed is to land located only in the BBB & CRR Survey and there is absolutely no description of land in the William F. Young Survey.

"5. The land described in plaintiffs' petition was conveyed by E. F. Carter to Elvin Carter, who is the same person as W. E. Carter, a defendant herein, by deed dated July 11, 1922, and has been of record in the Deed Records of Cass County, Texas, in Vol. V-4, page 312, for more than 30 years.

"6. Upon receipt of the deed mentioned in the preceding paragraph, defendant, W. E. Carter and his wife, under claim of exclusive ownership, took possession of the land and premises described in the deed and under such claim of exclusive ownership thereafter to date of trial had and held peaceable and adverse possession thereof, cultivating, using and enjoying the same, and during which time they had such land actually enclosed.

"7. Some four or five years ago, W. E. Carter and his wife moved off the land and premises in controversy, but said land has been continuously occupied by their tenants since that date to date of trial.

"8. W. E. Carter rendered and paid the taxes accruing on the land in dispute before the same became delinquent continuously each year since date of deed to W. E. Carter from his father E. F. Carter, dated July 11, 1922, to date of trial.

## "Conclusions of Law

"1. The prior suit between Cargile and Carter, being styled Carter, et al vs. Cargile, et al, No. 14,669, in the District Court of Cass County, Texas, is not res adjudicata of the issues in this suit, because the judgment roll in the former suit clearly reflects that only a boundary dispute was involved. Since plaintiffs in this case have admitted they had no actual possession of the land described in plaintiffs' original petition, and have further admitted they claim no title or right of possession of such land, other than rights acquired by reason of the judgment in the former suit, I conclude that plaintiffs are not entitled to recover the lands in controversy and the 'take nothing' judgment was properly entered against them.

"2. Since plaintiffs have not produced any evidence showing any break in the title, ownership and possession of W. E. Carter in the land in controversy since he acquired the same in 1922, I conclude he has record title to said land, and as well, has title under the five and ten years statutes of limitation."

The record in this case shows that in cause No. 14,669 in the District Court of Cass County, Texas, on May 18, 1948, W. E. Carter, as plaintiff, sued Scott Cargile, as defendant, in trespass to try title for the tract now in question in the William F. Young Survey in Cass County, Texas. Plaintiff's petition in said cause was in the usual statutory form of trespass to try title plus pleadings of the 3, 5, 10 and 25-year statutes of limitation. Defendant's answer in said cause read as follows:

"Comes now the Defendant, Scott Cargile, and files this his original answer hereto, and for such answers would respectfully show to the Court as follows:

## "I.

"That the Plaintiff herein, ought not to prosecute this suit, *for the reason that, he and his wife purchased this Property for a good and valuable consideration in the year 1938, and from that date have used, occupied and enjoyed such premises as their homestead,* actually living on the land, using, cultivating and enjoying the same each and every year.

## "II.

"The Defendant for further answer would show that he denies each and every allegation of the Plaintiff, demanding strict proof thereof, and of this his denyal places himself upon the Country.

## "III.

"The Defendant says that he is not guilty of the wrongs, injuries and trespasses set out in the Plaintiff's Petition, and of this his plea of not guilty, prays judgment of the Court.

## "IV.

"Defendant would further show that they have used, enjoyed and cultivated *the tract of land described in their deed, which is here now referred to for all purposes, for a period of more than ten years.*

"Wherefore premises considered, Defendant prays the Court that he be discharged with his costs without day." (Emphasis added.)

It is particularly noted here that defendant not only pleaded not guilty, but also made specific allegations to the effect that he and his wife had purchased "this property" in 1938 and that same was their homestead, and that they had used, enjoyed and cul-

tivated "the tract of land described in *their deed,* which is here now referred to for all purposes, for a period of more than 10 years." It is also noted that nowhere in either defendant's or plaintiff's pleadings in said cause was there ever specifically pleaded any description of any land in the BBB & CRR Survey in Cass County, Texas.

On March 4, 1949, judgment was entered in said above referred to cause. We quote from said judgment as follows:

"This, the 4th day of March, 1949, came on to be heard the above entitled and numbered cause, wherein W. E. Carter is plaintiff and Scott Cargile, defendant, and came the said parties, plaintiff and defendant, and announced ready for trial; and came a jury of twelve good and lawful men, who, being duly impaneled and sworn and having heard the pleadings, the evidence and the argument of counsel, on their oaths do, for their verdict, in response to the following special issues, definitions, and explanatory instructions submitted to them by the court, on the 4th day of March, 1949, make the following respective findings: which findings were received by the court and were filed and entered of record on the minutes of such court.

" 'In The District Court of Cass County, Texas' " "Fifth Judicial District

"W. E. Carter.............Plaintiff No. 14,669 vs. Scott Cargile............Defendant

"Gentlemen of The Jury:

"This cause will be submitted to you upon special issues of fact, which you will answer from the evidence.

"By 'preponderance of the evidence' is meant the greater weight of the credible testimony.

"You are the exclusive judges of the facts to be proved, of the credibility of the witnesses and of the weight to be given to the testimony; but you will receive the law from the Court, which is herein given you, and be governed thereby.

"Bearing in mind the foregoing instructions, you will answer the following questions:

"Question No. 1. Do you find from a preponderance of the evidence that the boundary line, as testified to by the plaintiff's witness, Mr. Frank Carter, is the correct boundary line between the tracts of land owned by the Plaintiff and Defendant in this case?

"Answer 'yes' or 'no.' No.

"If you have answered Question No. 1 'yes' and in that event only, then you will answer the following question:

"Question No. 2. Where, do you find, from a preponderance of the evidence, such line to be in reference to the line located by Surveyor Smitherman?

"Answer in feet and direction:

"If you have answered Question No. 1 'no' and in that event only, then you will answer the following question:

"Question No. 3. Do you find from a preponderance of the evidence that the boundary line, as laid out by the surveyor Smitherman, is the correct boundary line between the plaintiff's tract of land and the Defendant's tract of land?

"Answer 'yes' or 'no.' 'Yes.'

            \* \* \*

            "Judge.

"We, the jury, having answered the foregoing questions, now return the same into open court as our verdict in this case.

            \* \* \*

            "Foreman.

"Which findings were received by the court, and filed and entered of record on the minutes of this court, and the Court being of the opinion that judgment should be rendered thereon for the defendant, that Plaintiff take nothing by reason of their suit and that Defendant's title to the hereinafter described tract of land be quieted in him.

"It is therefore the order judgment and decree of the Court that Plaintiff W. E. Carter take nothing herein and that Scott Cargile the Defendant have judgment for title, and possession of the following described tract of land, to wit.

"All that certain tract or parcel of land, situated in Cass County, Texas, a part of the B. B. B. & C. R. R. Co. Survey, more particularly described as follows:"

(Here follows metes and bounds description of land in B. B. B. & C. R. R. Co. Survey.)

"for all of which he may have his execution, together with all costs of suit in this behalf expended."

(Note: The trial judge in the case at bar was not the trial judge who tried Cause No. 14,669 in 1949.)

Appellants in this cause (as well as appellees in this cause) introduced in evidence without limitation the pleadings and judgment in said Cause No. 14,669 above shown.

In the suit at bar, over objections of appellants' attorneys, appellees' attorneys brought out from appellant Cargile that he and his wife had acquired only one tract of land in Cass County, Texas, that being their homestead in the B. B. B. & C. R. R. Survey which was described in "their deed," that Cargile had never had possession of the land in controversy in the William Young Survey, that he had never paid any taxes on land in the William Young Survey and further that he claimed no title to said land except what title he had received by the judgment in the former suit in 1949.

The present suit was filed by plaintiffs on October 9, 1957, more than eight years after the 1949 judgment in said Cause No. 14,669, and apparently was the first time appellant Cargile ever asserted claim to the land in the William Young Survey.

Appellants Harkness and Friedman offered no evidence to show that they owned or claimed any right, title or interest in the land sued for herein and the trial court correctly rendered a "take nothing" judgment in this cause against appellants Harkness and Friedman.

Appellants on appeal present 24 points. Twenty-one of appellants' points assail the trial court's findings of fact, conclusions of law and the judgment generally, on the grounds of "no evidence," "insufficient evidence," and that each of same "is so against the overwhelming weight and preponderance of the evidence as to be clearly wrong." The remaining three points of appellants complain of the admission of certain evidence.

We have carefully reviewed the record in this cause and hold that there was ample evidence of probative force to support the fact findings made by the trial court and that such fact findings are sufficiently supported by the evidence.

We have also carefully considered all of the evidence in the case in the manner and under the rules laid down by the Supreme Court of Texas in the case of In re King's Estate, 150 Tex. 662, 244 S.W. 2d 660, and hold that the fact findings of the trial court in this cause are not so contrary to the overwhelming weight and preponderance of all of the evidence as to be clearly wrong and manifestly unjust.

Appellants principally rely on the case of Permian Oil Co. v. Smith, 129 Tex. 413, 73 S.W.2d 490, 107 S.W.2d 564, 111 A.L.R. 1152, and contend that this decision requires a judgment for them in this cause.

Appellees in reply thereto point out that the Supreme Court of Texas in a later case, Poth v. Roosth, 146 Tex. 7, 202 S.W. 2d 442, stated that it was unwilling to extend the rule in the Permian case beyond what was actually decided there. For a discussion of the Permian case and other cases discussed by the Supreme Court of Texas in Poth v. Roosth, we quote from Poth v. Roosth, supra, 202 S.W.2d 442, 444, as follows:

"The Court of Civil Appeals, for support of its ruling as to the meaning and effect of the take nothing judgment, cites Permian Oil Co. v. Smith, 129 Tex. 413, 73 S.W.2d 490, 107 S.W. 2d 564, 570, 111 A.L.R. 1152. That case involved the title to a section numbered 103 and the important question before the Court was as to the effect of a judgment that had been rendered in a prior suit. The petition in the prior suit was in the statutory form of trespass to try title, describing sections 103 and 104, the answer was a plea of not guilty, and the judgment was that the plaintiff take nothing by his suit. The plaintiff in the second suit, the Permian case, held under the defendant in the prior suit and asserted title to section 103 by virtue of the take nothing judgment. The defendants in the Permian case contended that the title to section 103 was not determined by the prior judgment, because it was shown by the findings of fact and conclusions of law in that case that the issue of fact tried and determined was one of boundary only and not of title. This Court held, however, in the Permian case that the take nothing judgment was unambiguous and could not be contradicted or interpreted by the trial court's findings, and, following prior decisions, held that the effect of the judgment was to vest the title in the defendant in that case.

"Chief Justice Cureton filed a vigorous dissenting opinion in the Permian case, protesting against the testing of the take nothing judgment by its form rather than by its substance. He took the position that the judgment was clearly ambiguous because of its vagueness and that it was necessary to examine the record in order to ascertain the nature of the cause of action and to interpret the judgment in such a manner that it would award the judicial consequences of the ascertained facts. He concluded from the trial court's findings of fact and conclusions of law that the words 'take nothing,' as used in the judgment, were not intended to award title to any land.

"We recognize the decision made by the majority of this Court in the Permian case as the settled law of this State, *but we are unwilling to extend its rule beyond what was actually decided there. As clearly appears from the majority opinion on rehearing, the Court, in deciding what the effect of the take nothing judgment was, looked to the pleadings and construed the judgment in the light of the pleadings. The Court held that the pleadings, which were merely formal with a description of the land, put in issue the title to the land and the right of possession,* * * *

"*In later decisions the Court has looked carefully to the pleadings in order to determine the scope and meaning of a take nothing judgment.* The plaintiffs in Knight v. Chicago Corp., 144 Tex. 98, 188 S.W.2d 564, brought suit 'in the form of an action in trespass to try title for a decree that a certain oil, gas and mineral lease executed by them * * * had terminated.' The plaintiffs were the owners of an oil payment out of 1/32 of 7/8 of the production and of royalties. Following an instructed verdict, the trial court rendered judgment that the plaintiffs 'take nothing' against the lessee defendant and certain other parties, including royalty owners. Referring

to the Permian case and to the plaintiffs' complaint of the form of the judgment, this Court held that they were not injured by the form of the judgment, that their rights to the oil payment and the royalties had not been impaired by the judgment, and that the decree that they take nothing 'merely vests in the lessee and those holding valid interests under it that particular leasehold estate.' * * *

"The district court, in Jinks v. Whitaker (affirmed, as modified, by the Court of Civil Appeals, 195 S.W.2d 814), rendered judgment that all relief sought by the plaintiffs, Mrs. Jinks and others, against the defendant be denied, and that 'plaintiffs take nothing as against the defendant.' Mrs. Jinks, in her application for writ of error, assigned error in the trial court's judgment because it appeared to divest her of title to the surface of the land. In refusing the application this Court wrote a per curiam opinion holding that 'the "take nothing" judgment of the district court, construed in the light of the pleadings, did not have the effect of vesting title to the surface in the defendant, respondent here.' Jinks v. Whitaker, 145 Tex. 318, 198 S.W. 2d 85. The first three paragraphs in Mrs. Jinks' trial petition were a formal action of trespass to try title. They were followed by many paragraphs in which she attacked on several grounds instruments executed by her conveying mineral interests in the land to the defendant Whitaker. The prayer of the petition was for judgment divesting out of the defendant and vesting in the plaintiff the title and possession of the mineral interests that had been conveyed by the several deeds, and for general relief. * * *

"In Campbell v. Schrock, Tex.Com'. App., 50 S.W.2d 788, it was held that the court, in determining the effect of a take nothing judgment, will look to the pleadings of the adversary party as well as to the pleadings of the party against whom the judgment was rendered. * * *

" * * * It follows that the legal effect of the take nothing judgment, read and measured as it must be by the pleadings, was to deny to the plaintiffs the cancellation of the lease and the recovery of the leasehold estate, and to affirm the defendants' ownership of the leasehold estate and right of possession under it, and that the judgment did not divest the plaintiffs of the entire title to the land and vest it in the defendants." (Emphasis added.)

In Fambrough v. Fambrough, Tex.Civ. App., 211 S.W.2d 254, 256, wr. ref., n. r. e., it was held that a "take nothing judgment" rendered in a prior case on a defendant's cross-action for title and possession of certain surveys against which the plaintiff had set up no claim and to which defendant had a deed, did not vest title thereto in the plaintiff so as to furnish the basis for a subsequent trespass to try title action by plaintiff against defendant and his sons.

The Supreme Court in the Permian case considered the pleadings (which were simply formal pleadings of trespass to try title by both plaintiff and defendant) and the judgment in that case and reached the conclusion that the take nothing judgment was unambiguous and could not be contradicted or interpreted by the trial court's findings. However, in this case the Supreme Court announced the following well-settled rule of construction of ambiguous judgments as follows:

"Where such a judgment is ambiguous, the judgment roll, and if necessary extrinsic evidence is admissible, not to contradict the judgment, but only to aid in its construction." [129 Tex. 413, 107 S.W.2d 567]

Also in support of this rule, see the following authorities: Knight v. Chicago corp., 144 Tex. 98, 188 S.W.2d 564; Adams v. Adams, Tex.Civ.App., 214 S.W.2d 856. In Adams v. Adams, supra, 214 S.W.2d 856, 857, it is stated:

"In arriving at the true intent, meaning and legal effect of a judgment the courts may, if necessary, consider the entire judgment roll. 49 C.J.S. Judgments § 436, p. 862; Magnolia Petroleum Co. v. Caswell, Tex.Civ.App., 295 S.W. 653; Campbell v. Schrock, Tex. Com.App., 50 S.W.2d 788; Keton v. Clark, Tex.Civ.App., 67 S.W.2d 437, er. ref.; General Exchange Ins. Corp. v. Appling, Tex.Civ.App., 144 S.W.2d 699."

Looking at defendant's pleadings in Cause No. 14,669, we find no particular land described, certainly none in the B. B. B. & C. R. R. Survey, nor is there any land in the B. B. B. & C. R. R. Survey described in plaintiff's pleadings in said cause, yet we find a judgment in said cause which in itself sets out the boundary issues tried by the jury and which renders a judgment for defendant for a specifically described tract of land in the B. B. B. & C. R. R. Survey. After the pleadings of the parties and the judgment in said cause are examined, the natural question arises, to-wit: How did the tract in the B. B. B. & C. R. R. Survey ever get into the lawsuit? There is a nucleus found in the pleadings of defendant in said cause to search for the reason why the B. B. B. & C. R. R. Survey tract got into the lawsuit in that defendant referred to the land he and his wife acquired by deed which was their homestead, that they had had 10 years' possession of land described in "their deed"

which was referred to for all purposes in defendant's answer. The parol testimony of appellant Cargile clearly shows that the land he was referring to in his answer in said Cause No. 14,669 was the land that he acquired in the B. B. B. & C. R. R. Survey by deed which he and his wife claimed as their homestead and that in said suit he did not claim the Carter land in the Wm. Young Survey. Appellees also introduced in evidence in this cause the deed whereby Cargile and his wife obtained title to the tract in the B. B. B. & C. R. R. Survey, which was given in 1939, and according to appellant Cargile's own testimony is the only deed to land he ever had in Cass County, Texas.

■ It is our view that the facts in the Permian case are distinguishable from the facts in the case at bar. It is our further view that when the judgment roll in the prior cause between Carter and Cargile, Cause No. 14,669, is examined, the judgment in that cause becomes ambiguous by reason of the facts heretofore stated and that the parol evidence in question therefore became admissible not to contradict the judgment in said Cause No. 14,669, but only to aid in its construction.

■ It is our view that under Poth v. Roosth, supra, and authorities therein cited, and under Fambrough v. Fambrough, supra, the able trial court in this cause correctly concluded as a matter of law that appellants in this cause were not entitled to recover the land in controversy and that the "take nothing" judgment" against appellants in this cause was properly rendered against them.

The judgment of the trial court is affirmed.