Grady L. **FOX** et al., Petitioners,

v.

Julia **THORESON**, Respondent.

No. A–10791.

Supreme Court of Texas.

Jan. 5, 1966.

Rehearing Denied Feb. 2, 1966.

Lemon, Close & Atkinson, Perryton, Elliott O. Boe, Fergus Falls, Minn., for Julia Thoreson.

Underwood, Wilson, Sutton, Heare & Berry, Harlow Sprouse, Amarillo, with above firm, for Grady L. Fox and others.

CALVERT, Chief Justice.

The opinion delivered in this case on October 6, 1965, is withdrawn and the following is substituted therefor.

The principal question in this case is whether an oil, gas and mineral lease executed by Julia Thoreson, as lessor, to Grady L. Fox, as lessee, has terminated, or whether, on the contrary, the lease is still in full force and effect.

Suit was by Julia Thoreson, as plaintiff, against Grady L. Fox, Richome Oil & Gas Company, a partnership composed of J. B. Hermann and R. P. Hermann, J. B. Hermann and R. P. Hermann, individually, Amarillo National Bank, C. P. Ware, Trustee, and Panhandle Eastern Pipeline Company, as defendants, in trespass to try title to recover title to and possession of a 234.67 acre tract of land in Hansford County, for cancellation of an oil, gas and mineral lease and other related instruments alleged to constitute a cloud on her title, and for certain other relief. Plaintiff's title and right of possession to the surface estate in the land was not genuinely in issue. The basis for the other relief sought by the plaintiff was that the lease in question had terminated as a matter of law. Amarillo National Bank, C. P. Ware, Trustee, and Panhandle Eastern Pipeline Company have gone out of the case on appeal and their pleadings in the trial court need not be noticed. The suit was defended by Fox and Richome Oil & Gas Company, assignee of a one-half interest in the estate created by the lease, on the ground that as a matter of law the lease had not terminated; alternatively, that the plaintiff was estopped to assert that the lease had terminated; and, in any event, that they were entitled to recover expenditures made by them in good faith in drilling and equipping a gas well on the land and in connecting the well to Panhandle Eastern's pipeline, which expenditures they sought to recover by counterclaim.

Issues of estoppel and an issue of good faith improvements were tried to a jury. The jury resolved the estoppel issues against defendants but answered the good faith improvement issue in their favor. As pertinent here, the trial court rendered judgment cancelling the oil, gas and mineral lease, divesting all right, title and interest in the premises out of the defendants, awarding plaintiff a recovery of full title to and possession of the premises, and awarding defendants a recovery of $42,103.-54 for improvements made in good faith

subject to certain off-sets established by an accounting. The Court of Civil Appeals affirmed the trial court's judgment. 390 S.W.2d 308. We reverse the judgments of the trial court and Court of Civil Appeals and remand the cause to the trial court with instructions.

Whether the lease in question has terminated or is still in force turns on a proper interpretation of its provisions. The lease was executed and delivered on December 13, 1958. Its first two provisions contain the only language having any bearing on its duration. They read:

"1. Lessors, in consideration of Ten Dollars and other valuable consideration ($10.00) in hand paid, and of the royalties herein provided, and of the agreements of lessee herein contained, hereby grants, leases and lets exclusively unto the lessee for the purpose of investigating, exploring, prospecting, drilling and mining for and producing oil, gas and all other minerals, laying pipe lines, building tanks, power stations, telephone lines and other structures thereon to produce, save, take care of, treat, transport, store and own said products, including salt water, and to house his employees, the following described land in Hansford County, Texas, to-wit: [description of land].

"2. This lease is a commencement lease under which the lessee or his assigns are obligated to commence the drilling of a well on the leased premises within one hundred twenty (120) days from the date hereof, said well to be drilled to a depth sufficient to test the Hugoton Field or about 3000 feet. Such well shall be completed within one hundred twenty (120) days after commencement thereof. If such well is not commenced and completed within such time, then this lease shall terminate as to both parties. If however, production is obtained, then this lease will remain in force for as long thereafter as oil, gas, casinghead gas, gasoline or any of them is produced."

Drilling operations were commenced on the property on March 10, 1959, and a well capable of producing gas in paying quantities was completed on or about April 10, 1959. The well was shut in upon completion and production was not obtained until a pipeline connection was made on September 3, 1960, from which date production continued without cessation to the date of trial and, presumably is still continuing.

All parties are in agreement that the well was timely commenced and completed and that production was not obtained by July 9, 1959, the final day of the 120 day completion period. At this point agreement ends. Plaintiff contends that the lease required production by the end of the completion period or the estate granted by the lease terminated automatically and reverted to her. Defendants contend that the estate granted by the lease did not terminate automatically at the end of the 120-day completion period, and that, therefore, the trial court's judgment cancelling the lease and related instruments is clearly erroneous.

▬ The terms of the lease are most unusual; they do not conform to any pattern we have been able to discover by exhaustive research. The lease contains no habendum clause. It does not grant an estate for a definite term. Defendants suggest that the instrument is a "no term" lease. We think not. It is a no term lease only in the sense that it does not expressly provide that it is for a definite period of time or in the sense that it does not contain the usual primary term clause found in modern leases. But these are not the characteristics which historically mark the so-called no term lease. Historically, a no term lease is one which does not impose an obligation on a lessee to drill a well or to produce oil or gas or other minerals as a condition to the continued life of the lease indefinitely. The no term lease, in common use in a past era in the oil and gas industry but now all but extinct, usually imposes an obligation to drill a

well, but, as observed by the Court of Civil Appeals in this case, permits the lessee to forego that obligation and keep the lease alive indefinitely by the payment of rentals. See The Nature of the Property Interests Created by an Oil and Gas Lease in Texas by A. W. Walker, 7 Texas Law Review 1, 13; 2 Summers, Oil and Gas, Perm. Ed., 191; 2 Kuntz, Oil and Gas, 248; 3 Williams Oil and Gas Law, 4; The Law of Oil and Gas by James A. Veasey, 19 Mich. Law Review 161, 169. As examples, see Stephens County v. Mid-Kansas Oil & Gas. Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566 (1923); Texas Co. v. Davis, 113 Tex. 321, 254 S.W. 304, 255 S.W. 601 (1923); Rosson v. Bennett, Tex.Civ.App., 294 S.W. 660 (1927), no writ history. The lease under consideration imposed an obligation on the lessee to commence and complete the drilling of a well within a definite time and expressly provided that the lease would terminate upon failure to discharge the obligation.

But if the lease is not a no term lease, neither does it contain a "primary term" in the sense in which that phrase is commonly used in the oil and gas industry. A "primary term" is said by Williams and Meyers in their book, Oil and Gas Terms, to be the period, typically five or ten years, during which a lease may be kept alive by a lessee by virtue of drilling operations or the payment of rentals, even though there is no production in paying quantities. See page 189. Their definition or description is not complete. A primary term is also a period of time at the end of which the estate granted will terminate but which estate may be extended by some other provision, usually one for production. That is the sense of the writings by scholars in the field of oil and gas. See Williams and Meyers, Oil and Gas Terms, 189; Veasey, The Law of Oil and Gas, 19 Mich.L.R. 161, 171, et seq.; 2 Kuntz, The Law of Oil and Gas, 252; Sullivan, Handbook of Oil & Gas Law, 95; 3 Williams, Oil and Gas Law, 35; The Nature of the Property Interests Created by an Oil and Gas Lease in Texas by Walker, 8 Texas Law Review 483, 511, et seq. Even if the first two sentences of paragraph 2 of the instant lease may be said to have the "primary term" characteristic of prescribing a period of time during which it may be kept alive by the lessee by drilling operations, neither those sentences nor the third sentence prescribe a period of time at the end of which the estate granted will terminate. The provision in the third sentence for termination of the lease is strictly contingent. It provides for termination only if the lessee *fails* to commence and complete a well within the time periods prescribed in the first two sentences. Timely discharge of the obligations, absent the fourth sentence of the paragraph, would extend the life of the lease indefinitely, subject only to a special limitation imposed by law which would terminate the estate upon abandonment or cessation of use of the estate for its intended purpose, Texas Co. v. Davis, 113 Tex. 321, 254 S.W. 304, 255 S.W. 601 (1923); Stephens County v. Mid-Kansas Oil and Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566 (1923); and subject to an implied covenant on the part of the lessee to exercise reasonable diligence in obtaining production and marketing the minerals. See W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27 (1929).

Thus far we have interpreted paragraph 2 of the lease as though the fourth sentence were not in it; but proper rules of interpretation require that we consider all of the provisions of the lease, including the fourth sentence of the paragraph, in arriving at its meaning. McMahon v. Christmann, 157 Tex. 403, 303 S.W.2d 341, 345 (1957); Reynolds v. McMan Oil & Gas Co., Tex.Com.App., 11 S.W.2d 778, 781 (1928). Honoring this rule, the Court of Civil Appeals held, first, that the 120-day period within which the lessee was obligated to commence drilling a well was the primary term of the lease which was to be extended for not to exceed 120 days for completion of the well. Then, giving em-

phasis to the words, "If however," which introduce the fourth sentence, the court held that sentence to be alternative to the third sentence; and, having done so, interpreted the words, "as long thereafter," appearing in the fourth sentence, to refer to the end of the extension period within which the lessee was obligated to complete the well. By this process of reasoning, the court reached the conclusion that the lease granted "a determinable fee subject to a special limitation, which was production at the end of the second 120-day period or the determinable fee would revert ipso facto." As thus interpreted by the Court of Civil Appeals, paragraph 2 of the lease would be rewritten to read as follows:

"Subject to the other provisions herein contained, this lease shall be for a term of 120 days from this date (called 'Primary Term') and such additional time, not to exceed 120 days, as may be necessary to complete a well, and as long thereafter as oil, gas, casinghead gas, gasoline or any of them are produced from the land hereunder. If, however, the drilling of a well on the leased premises is not commenced within 120 days from this date and completed within 120 days after the commencement thereof, then this lease shall terminate as to both parties."

The lease as thus rewritten would, indeed, create a determinable fee subject to a special limitation which would terminate the estate granted if production were not obtained within the second 120-day period. But the effect of the Court of Civil Appeals' interpretation is to write into the lease a primary term where, as we have held, none exists; to give the words, "as long thereafter," a meaning they cannot possibly have in the context in which the parties used them, and to impose a special limitation on the grant by implication. None of these things can be done if sound rules for the interpretation of written instruments are to be followed.

▪ Interpretation of a written instrument is always a quest for the intention of the parties to it. However, language used by the parties should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated. The words, "as long thereafter," considered in context with the other language of the fourth sentence, clearly refer to the time when "production is obtained" and not to the time when the well completion period ends. The words simply serve to continue the lease in force as long after "production is obtained" as "oil, gas, casinghead gas, gasoline or any of them is produced." Another sound rule of interpretation is that language used by the parties to an oil and gas lease will not be held to impose a special limitation on the grant unless it is clear and precise and so unequivocal in nature that it can reasonably be given no other meaning. Knight v. Chicago Corporation, 144 Tex. 98, 188 S.W. 2d 564, 566 (1945); Walker, 8 T.L.R., 487–491. It cannot be said that the language of paragraph 2 clearly and unequivocally imposes a special limitation on the grant which would terminate the lessee's estate if production were not obtained within the second 120-day period. We hold, therefore, that the lease did not terminate at that time. We do not consider Clark v. Holchak, 152 Tex. 26, 254 S.W.2d 101 (1953), as analogous or controlling.

Plaintiff does not seek cancellation of the lease on the ground of abandonment or on the ground that it terminated by its own terms at some time subsequent to the well completion period. The legal effect of the fourth sentence of paragraph 2 after that date is not in issue and need not be decided.

Having held that the lease did not terminate at the end of the well completion period, the question of the right of Fox and Richome to recover the value of good faith improvements goes out of the case.

Defendants are wrong in asserting that their motions for an instructed verdict and for judgment notwithstanding the jury's verdict should have been granted. The full fee title to the surface and the minerals was put in issue by plaintiff's suit in trespass to try title and defendants' plea of not guilty. Accordingly, the judgments of the Court of Civil Appeals and the trial court are reversed and the cause is remanded to the trial court for entry of judgment in accordance with this opinion.

The parties are granted fifteen days from this date in which to file additional motions for rehearing.