Mrs. Frankie Henry WEED, Appellant,

v.

BRAZOS ELECTRIC POWER COOPERATIVE, INC., et al., Appellees.

No. 15925.

Court of Civil Appeals of Texas, San Antonio.

Oct. 25, 1978.

Jack Ware, Uvalde, for appellant.

Jos. Irion Worsham, Dallas, amicus curiae.

Segrest, Mills & Cameron, Waco, Carlos C. Ashley, Ashley & Ashley, Llano, for appellees.

CADENA, Chief Justice.

Appellant's motion for rehearing is overruled. The opinion previously filed in this case is withdrawn and the following is substituted as the opinion of the Court in this case.

Plaintiff, Mrs. Frankie Henry Weed, appeals from a judgment denying her prayer that a coal and lignite lease executed by her on October 25, 1966, naming James F. Gray as lessee, be declared to have terminated. Defendants are Brazos Electric Power Cooperative, Inc., and South Texas Electric Cooperative, Inc., assignees of the rights of the original lessee, and Jessie Gray Wilson, the sole devisee of the original lessee.

Plaintiff alleged that the lease "lacks mutuality in that [it] does not have a term; said term being measured by the will and election of the Lessee," and that, although she had accepted all delay rentals tendered under the lease until October 24, 1974, she "elects not to further accept delay rentals and elects to terminate [the] lease . . ." She does not allege the breach of any express or implied covenant by defendants, nor does she allege that defendants delayed development of the land for an unreasonable time.

The following facts are stipulated:

1. Plaintiff was paid a valuable consideration, in the form of a cash bonus, for the execution of the lease.

2. As of the date of the stipulations, April 29, 1977, defendants had not commenced production of coal, lignite or other minerals.

3. On June 25, 1975, plaintiff notified the bank where her delay rentals were to be deposited that she did not want any further rentals deposited in her account and that she had so notified defendants.

4. Cashier's checks in the amount of the delay rentals due October 25, 1975, and October 25, 1976, were tendered to plaintiff by defendants "in compliance with the terms of" the lease.

5. Plaintiff "has not accepted any delay rentals for the years commencing October 25, 1975, or October 25, 1976, but [has] held the tendered checks in her possession." The two mentioned checks have been "tendered into the registry of the Court" by plaintiff.

6. Defendants and the original lessee have performed all acts and obligations required of lessee under the terms of the

lease to keep such lease in full force and effect.

■ The granting clause of the lease in question purports to convey the described lands "for the purpose of . . . producing . . . coal, lignite, clay and other minerals (except oil and gas)." Except for the description of the minerals which are to be produced, the granting clause is, for all practical purposes, the same as that found in the usual form of oil and gas lease. However, there is a significant difference between the habendum clause found in the ordinary oil and gas lease and that which is contained in the lease before us. In the usual oil and gas lease, the habendum clause provides that the lease is to remain in force and effect for a specified number of years (commonly called the "primary," "fixed" or "exploratory" term), and so long thereafter as there is production of oil and gas in paying quantities. Such lease usually contemplates the commencement of drilling operations within one year but provides that lessee may, without initiating such drilling operation, continue the lease in effect for the entire primary term by payment of delay rentals. As our Supreme Court said in *Fox v. Thoreson,* 398 S.W.2d 88, 91 (Tex.1966), the primary term designates the period of time at which the estate granted will terminate unless it is extended by some other provision of the lease, usually a provision to the effect that the lease will remain in force so long as there is production of oil or gas in paying quantities. The habendum clause in the lease executed by plaintiff provides that the lease shall remain in force "so long as the rentals hereinafter provided for are paid and/or so long as coal, lignite, clay and other minerals (except oil and gas) are produced from" the described lands.

In the ordinary oil and gas lease which incorporates a primary term, the lessor is assured that at the expiration of the specified time he will be reaping the benefits of production or the estate will revert to him. The lease involved in this case contains no primary term, and the effect of the language of the habendum clause is to allow lessee to continue the lease in force indefinitely merely by paying delay rentals without commencing development of the minerals. If the language is given its effect, plaintiff is in the unhappy position of being unable to point to a definite date on which she will either be receiving royalties or will again become the owner of the estate granted.

In *Fox, supra,* the Supreme Court defined a "no term" lease as one "which does not impose an obligation on a lessee to drill a well or to produce oil or gas or other minerals as a condition [precedent] to the continued life of the lease indefinitely." 398 S.W.2d 88, 90 (Tex.1966). Chief Justice Calvert then added:

> The no term lease, in common use in a past era in the oil and gas industry but now all but extinct, usually imposes an obligation to drill a well, but * * * permits the lessee to forego that obligation and keep the lease alive indefinitely by the payment of rentals. * * * As examples, see *Stephens County v. Mid-Kansas Oil & Gas Co.,* 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566 (1923); *Texas Co. v. Davis,* 113 Tex. 321, 254 S.W. 304, 255 S.W. 601 (1923); *Rosson v. Bennett,* Tex. Civ.App., 294 S.W. 660 (1927) no writ history.

398 S.W.2d at 90–91 (1966). The opinion in *Fox* is troublesome because at one place it contains language to the effect that a no term lease "does not impose an obligation on a lessee to drill a well or to produce oil or gas or other minerals"; this language is followed in the next sentence by the statement that the no term lease "usually imposes an obligation to drill a well." *Id.* at 90–91.

The significant distinction between a no term lease and a lease containing a primary term does not depend on the presence or absence of language creating an "obligation" to drill or commence operations. Under the "unless" form of drilling clause which is universally used today, the lessee is under no duty to drill, or even to pay delay rentals. 2 Summers, The Law of Oil and Gas, § 337 at 394–95 (1959). Insofar as *Fox*

suggests that the absence or presence of an "obligation" to drill is determinative in distinguishing between a no term lease and the usual form of lease which contains a primary term, the suggestion must be disregarded, since neither form of lease imposes a duty to drill or to commence operations. However, it is clear that in *Fox* the Supreme Court was not using the term "obligation" in the sense of "duty." When the Court, in apparent contradiction of its statement that a no term lease imposes no obligation to drill, observed that a no term lease imposes an obligation to drill, but permitted lessee to avoid such obligation by paying rental, it was not speaking of an "obligation" which imposed on the lessee a duty to perform or to be liable for breach of a contractual duty. The Court spoke of the obligation to drill or to produce "as a condition to the continued life of the lease indefinitely," and referred to the fact that, instead of drilling, the lessee in a no term lease could "keep the lease alive indefinitely by the payment of rentals." 398 S.W.2d at 90–91. The hallmark of a primary term lease is that it establishes a period of time at the end of which the estate granted will terminate unless production has been achieved. It is the absence of language which provides for termination of a lease at a specified time unless minerals are being produced which distinguishes the no term lease from a lease containing a primary term.

We, therefore, agree with plaintiff's contention that the lease before us is a no term lease.

Plaintiff, relying on *National Oil & Pipe Line Co. v. Teel,* 95 Tex. 586, 68 S.W. 979 (1902), argues that, because of the lack of a primary term, the lease in question lacks mutuality, is a unilateral contract, and is necessarily "void" because it does not obligate lessee to produce minerals or to pay rentals. In *Teel,* the instrument, after reciting that Teel "granted, bargained, sold, and conveyed" to Nicholson "all the oil and gas and coal and other minerals in and under" the lands described in the instrument, provided: [1]

> To have and to hold . . . until [Nicholson, his] heirs and assigns, on the following conditions: . . . In case operations for either drilling a well for oil or mining for coal or other minerals is not begun and prosecuted with due diligence within two (2) years from this date, then this grant shall immediately become null and void as to both parties: provided, that [Nicholson] may prevent such forfeiture from year to year, and no longer, by paying in advance $100 . . . ., until such well is completed, or until shipments from such mine have begun.

67 S.W. 545, 546 (Tex.Civ.App.) aff'd, 95 Tex. 586, 68 S.W. 979 (1902). The Supreme Court held that the instrument passed no interest in the land, but was a mere contract "for an option" by which Nicholson might acquire such interest. The Court said:

> A naked agreement, by which one promises to convey to another an interest in land in consideration of money to be paid or acts to be performed by such other, but which does not bind the other to pay or perform the consideration, as the case may be, cannot be enforced. In such case there is a want of mutuality in the agreement. The one party promises to do something; the other does not promise absolutely to do anything; hence there is no consideration to support a contract, and it is void. On the other hand, a promise to give an option is valid if supported by an independent consideration.

95 Tex. 586, 591, 68 S.W. 979, 980 (1902).

Plaintiff contends that since *Teel* involved a no term lease it is controlling in the case before us, requiring the conclusion that the no term lease executed by plaintiff is "void." We disagree.

In *Deaton v. Rush,* 113 Tex. 176, 197, 252 S.W. 1025, 1033 (1923), the Court suggested the possibility that the *Teel* conclusion

---

1. The provisions of the instrument in *Teel* are taken from the opinion of the Court of Civil Appeals in that case, 67 S.W. 545, 546 (1902), since the opinion of the Supreme Court does not set out the provisions of the instrument.

"rested upon the theory that only a nominal consideration was paid and that the real consideration was development which could not be enforced by the lessor." In the case before us, plaintiff was, according to the stipulation of the parties, paid a cash bonus in addition to the consideration of $10.00 mentioned in the lease instrument. Plaintiff does not contend that the cash bonus constituted only a "nominal" consideration. Irrespective of the validity of the distinction suggested in *Deaton,* it is clear that *Teel* cannot be considered controlling today. The *Deaton* opinion points out that if *Teel* was not overruled by the case of *Gilmore v. O'Neil,* 107 Tex. 18, 173 S.W. 203 (1915), it was at least ignored in that later case. The *Deaton* opinion concludes: "Without elaborating our views on the matter, we think that a lease conveying oil and gas in place for a valuable consideration with the right to enter and appropriate creates and conveys to the lessee an estate in the land itself and is not a mere option." 113 Tex. at 198, 252 S.W. at 1033. It is significant that the lease in *Deaton* contained language to the effect that the lessee had the "right or option" either to surrender the lease at any time by making certain payments " 'or to continue the grant in force and effect and prevent its forfeiture from time to time, by [paying delay rentals] or beginning and drilling wells . . . ' " 113 Tex. at 186, 252 S.W. at 1028. Further, *Teel* cannot be given controlling effect in this case in the face of the decision in *Stephens County v. Mid-Kansas Oil & Gas Co.,* 113 Tex. 160, 254 S.W. 290 (1923). In that case, lessee agreed to begin "prospect work" within 18 months from the date of the lease. However, this "agreement" was clearly illusory, since the instrument went on to provide that if lessee was not "prospecting" on the premises at the termination of the 18-month period, lessee was to pay lessor $1.00 per acre "for all the time [lessee] shall keep or hold said lease on said land after 18 months has [sic] expired." 113 Tex. at 165, 254 S.W. at 291. The Supreme Court, after careful examination of the problems involved, unequivocally held that the instrument conveyed, at the time of its execution, a fee simple determinable in the oil and gas in place.

The situation in *Stephens County* was no different, from the viewpoint of lessor, than the situation of plaintiff in this case. Despite the language to the effect that lessee agreed to begin operations within 18 months, it is clear that lessee was under no obligation to drill within such period, since in case of its failure to drill it could keep the lease in force by paying rentals. The language of that lease makes it clear that lessee was under *no* duty to do either. Further, as in the case before us, the lease in *Stephens County* contained no language prohibiting the postponement of drilling operations indefinitely by payment of delay rentals. Stated simply, the lease in *Stephens County,* like the lease in *Teel* and the lease executed by plaintiff in this case, was a "no term" lease which contained no language imposing on lessee the duty to either drill or pay rentals, while permitting lessee to keep the lease in effect indefinitely by simply paying rental. *Teel* held that such an instrument conveyed no interest in the land and amounted to no more than an unenforceable option. *Stephens County* is a definitive holding that such an instrument effects a present conveyance of a fee simple determinable estate in the minerals. The impossibility of reconciling the two holdings is patent. The "option" rationale, advanced with no citation of supporting authority in *Teel,* must be rejected in favor of the conclusion reached, following detailed analysis of the problem, in *Stephens County.*

The suggestion that *Stephens County* involved a lease containing a primary term, rather than a no term lease, cannot be seriously considered. In *Fox,* the Supreme Court expressly referred to *Stephens County* as an "example" of a no term lease. 398 S.W.2d at 91. The other two cases mentioned by the Supreme Court in *Fox* as examples of no term leases are *Texas Co. v. Davis,* 113 Tex. 321, 254 S.W. 304, 255 S.W. 601 (1923), and *Rosson v. Bennett,* 294 S.W. 660 (Tex.Civ.App.—Waco 1927, no writ). Both of these decisions reached results incompatible with the "option" rationale applied in *Teel.*

In *Davis,* the lease, following language to the effect that the grant would terminate if the drilling of a well was not commenced within two years, provided that lessee "may prevent such forfeiture . . . by paying to [lessor] . . . $10.00 per year, until such well is commenced or until shipments from such mine have begun . ." 113 Tex. at 327, 254 S.W. at 305. The Supreme Court held that the instrument conveyed a determinable fee, relying on *Stephens County. Id.* at 331, 254 S.W. at 306. On rehearing, the Supreme Court pointed out that the provision for annual rentals permitted lessee to defer drilling for no more than a reasonable time. *Id.* at 336, 255 S.W. at 601.

In *Rosson,* the lease provided that if no well were commenced within the first year, the " 'lease shall terminate as to both parties, unless the lessee, on or before that date, shall pay . . . to the lessor . . the sum of one dollar per year . . ., which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from said date.' " The lease further provided, " 'In like manner and upon all like payments . . . the commencement of a well may be further deferred for like periods of the same number of months successively.' " 294 S.W. at 661. Lessor in *Rosson* contended that the provision concerning extension of the lease by payment of rentals was unenforceable "because it is unilateral, in that it attempts to bind [lessor] to accept such annual rentals and consent to a renewal of the lease for each such period successively, but does not bind [lessee] to pay such rentals." *Id.* at 662. The court rejected this contention, saying:

[The] lease was granted in consideration of a cash payment of $500.00, [and it recites] that such payment should cover not only the specific term of three years provided for the continuance thereof, but also the option of extending the same in the manner provided by said renewal provision. A contract for the grant of an option is necessarily unilateral. Its very purpose is to enable the grantee to exercise the particular right therein contract-

ed for or not, as he may elect, and its value consists in that privilege.

*Id.* at 662. The court then held that the effect of the lease was to convey a fee simple determinable in the minerals, and said that the provision permitting extensions by payment of rentals should be construed as authorizing only reasonable delay. *Id.*

The holdings in *Davis* and *Rosson* that provisions for successive extensions of a lease by payment of rentals, without language limiting the number of such extensions, does not authorize lessee to delay development unreasonably. This proposition finds full support in the language of the Supreme Court in *Stephens County,* where the Supreme Court said that lessee could keep the lease alive "for a reasonable time" by payment of the rentals. 113 Tex. at 166, 254 S.W. at 291.

■ As already pointed out, plaintiff did not allege in her pleadings that lessees had delayed development of the land for an unreasonable period of time. Her brief in this Court makes no such contention. Whether a lessee has unreasonably delayed commencement of operations necessarily depends on all the facts and circumstances of the case. We cannot hold that, as a matter of law, the delay in this case has been unreasonable, and plaintiff does not so argue. Her sole contention is that, under *Teel,* the instrument executed by her amounts to no more than an unenforceable option. We consider this to be an untenable position in view of the holdings in *Stephens County* and the subsequent holdings in *Davis* and *Rosson,* all of which, according to *Fox,* involved no term leases.

We do not agree with plaintiff's contention that *Reed v. Wylie,* 554 S.W.2d 169 (Tex.1977) must be construed as a "pronouncement to the effect that coal and lignite leases are not governed solely by the principles of oil and gas law." *Reed* involved neither an oil and gas lease nor a coal lease. The Court was construing language, in a conveyance reserving an undivided interest in " 'all oil, gas and other

minerals.' " The sole holding was that the clause did not reserve to the grantor any interest in coal. The Court was careful to point out that its conclusion would have been different if the instrument had expressly reserved coal. The opinion contains no language suggesting that the nature of the estate conveyed by an instrument depends on whether it covers merely "oil, gas and other minerals" or whether it covers coal and lignite. Plaintiff concedes that the issue in *Reed* "is not identical to the issue before" us in this case. We find there is no similarity between the question involved in *Reed* and the question now before us.

Since plaintiff's claim for relief is based solely on the contention that the lease in question is unenforceable because of want of mutuality and lack of consideration, the judgment of the trial court must be affirmed.