

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00455-CV

ROYALCO OIL & GAS CORPORATION

APPELLANT

V.

STOCKHOME TRADING CORPORATION

APPELLEE

----------

## FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION

----------

Appellant Royalco Oil & Gas Corporation appeals from the trial court's summary judgment in favor of Appellee Stockhome Trading Corporation. In one issue, Royalco argues that the trial court's failure to apply Texas oil and gas law resulted in an erroneous determination that a partial transfer of a lessee's interest in a disposal well lease agreement was a sublease. Because we hold that the

trial court did not err by declining to apply Texas law relating to mineral leases, we affirm.

## Background

In February 2008, Stockhome entered into a "Salt Water Disposal Lease Agreement" (the Lease) with Triad Rovan Services, L.P. (a third party not involved in this appeal). The Lease states that it "shall in no way affect ownership of the oil, gas[,] or minerals in, on[,] or under the [lease premises]. This Lease is for the sole purpose of allowing [Triad] to conduct its Business Activities." "Business Activities" as defined in the Lease includes activities relating to the disposal and treatment of water produced from oil and gas wells. The Lease provides a term of ninety-nine years or until Triad discontinues its "Business Activities." The Lease contains a provision that Triad "shall not have the right to sell more than 50% to assign or sublet its interest in this Lease or the Premises" without Stockhome's written consent.

The Lease calls for Triad to make monthly rental payments. Failure to make rental payments is an event of default if Triad does not make the payment within fifteen days after receiving written notice of nonpayment. In the event of such default, Stockhome can terminate the Lease by sending Triad final written notice of its default and Stockhome's election to terminate. Triad then has ten days to cure.

On April 18, 2008, Triad entered into a "Services Agreement" with Royalco. In the Services Agreement, Royalco agrees to provide services "as specified on

Exhibit A." Exhibit A states that Triad "has the right to manage a deep well" under the Lease with Stockhome, that Triad will continue to manage the well and the well site, and that Royalco will complete and operate the well, as well as another saltwater disposal well in Weatherford. The exhibit further states that "[i]n connection with [Royalco] providing the [s]ervices hereunder, [Triad] assigns to [Royalco] 50% of [Triad's] interest" in the Lease. After executing the Services Agreement, Royalco hired contractors to dig the existing well on the property another 800 feet.

Triad did not make its April 2008 rent payment to Stockhome when its check was returned for insufficient funds. Royalco issued a check to Stockhome to cover the April rent.

Triad failed to pay its May 2008 rent, and on June 25, 2008, Stockhome gave Triad written notice that it was terminating the Lease for nonpayment of the rent. Stockhome gave notice to Triad of its default but did not give notice to Royalco. In July 2008, Royalco offered to cure the default, but Stockhome declined to accept the offer.

Stockhome sued Triad based on the Lease agreement. Stockhome also sued Royalco for a declaratory judgment that, among other things, Royalco was a sublessee of Triad and had no standing under the Lease; that Stockhome properly terminated the Lease; and that Royalco's sublease with Triad terminated immediately upon Stockhome's termination of the Lease. Royalco filed

3

counterclaims for breach of contract, quantum meruit, promissory estoppel, declaratory relief, and unjust enrichment.

The trial court rendered a default judgment against Triad and subsequently granted summary judgment for Stockhome on its declaratory judgment action, decreeing that, among other things, the assignment from Triad to Royalco was a sublease and that Stockhome had properly terminated the Lease with Triad, which terminated Royalco's sublease. The trial court ordered that Royalco take nothing on its claims.

## Analysis

Royalco brings one multi-part issue, which we construe as a *Malooly* issue,[1] arguing that the trial court erred by granting summary judgment for Stockhome. Under this issue, Royalco makes two primary arguments: (1) Stockhome failed to support its motion with relevant, controlling Texas authority "*i.e.*, Texas's well-developed oil and gas law" and (2) the trial court's construction of the assignment as a sublease is inconsistent with and contrary to Texas oil and gas law.

Royalco's arguments on appeal primarily turn on whether the Services Agreement was an assignment or a sublease. That the Lease and the Services Agreement use the terms "assign" and "assignment" is not controlling. Parties

---

[1]*See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970) (allowing an appellant in an appeal from the grant of summary judgment to bring one issue under which the appellant may brief all possible grounds upon which summary judgment should have been denied).

not infrequently use the term "assignment" for instruments that, under the law, are subleases.[2] We look to the substance of an instrument to determine its legal effect.[3]

Under the law relating to leases generally, the lessee's voluntary transfer of part or all of its interest under the lease to another is treated as either an assignment or a sublease, and the rights and liabilities of the parties depend on the nature of the transfer.[4] If the lessee transfers his entire interest in part or all of the premises without retaining any reversionary interest, the transfer is an assignment.[5] The assignee becomes the tenant in place of the original lessee and is in privity of estate with the lessor.[6] If the lessee retains any reversionary interest, the transfer is a sublease, and the transferee is not in privity of estate or privity of contract.[7] Royalco acknowledges in its brief that if the Services

---

[2]*See, e.g.*, *Dameron Oil Co., Inc. v. Majeed*, No. 10-01-00401-CV, 2004 WL 1211620, at *2–3 (Tex. App.—Waco June 2, 2004, pet. denied) (mem. op.) (construing an instrument labeled as an "Assignment of Lease" as a sublease and noting that "[t]o decide whether there is an assignment or a sublease, the form of the instrument is not controlling"); *Parr v. Farmers State Bank of Orange Grove*, 659 S.W.2d 883, 884 (Tex. App.—San Antonio 1983, no writ) (holding that the instrument in the case, though called an "assignment," was in reality a sublease).

[3]*See Parr*, 659 S.W.2d at 884.

[4]*Amco Trust, Inc. v. Naylor*, 159 Tex. 146, 150, 317 S.W.2d 47, 50 (1958).

[5]*Id.*

[6]*Id.*

[7]*Id.*

Agreement constitutes a sublease rather than an assignment, no privity of contract or privity of estate exists between Royalco and Stockhome and that in that scenario, Royalco would have no contractual right to enforce the Lease against Stockhome.

Royalco first argues that under Texas law, oil and gas leases are different than ordinary leases and are subject to different rules and that as a matter of established oil and gas law, and under the Lease's express terms, Triad could and did assign up to fifty percent of its leasehold interest to Royalco. But the Lease between Stockhome and Triad was not a mineral lease. Nothing in the Lease, and no evidence in the record that Royalco has directed us to look at, gives any indication that the Lease was for the recovery of minerals from the property. The Lease by its plain terms was instead for the purpose of drilling and operating a disposal well on the premises.

Royalco points out that the Railroad Commission of Texas, which issues permits for oil and gas wells, issued a permit for this well. That a permit for the disposal well was issued by the Railroad Commission does not make this Lease an oil and gas lease. Rather, the Railroad Commission's issuance of a permit merely reflects the legislature's adoption of a state policy relating to the maintenance of the quality of fresh water in the state and its delegation of responsibility for oversight of injection wells to various state agencies.[8] A

---

[8]*See* Tex. Water Code Ann. §§ 27.003, 27.011 (West 2008). The Texas Water Code defines an injection well as "an artificial excavation or opening in the

6

disposal well is an injection well used specifically for the injection of industrial and municipal waste or oil and gas waste.[9]

The Railroad Commission is responsible for the control and disposition of waste and the prevention of pollution water resulting from activities associated with the production of oil, gas, or geothermal resources, including activities associated with the drilling of injection water source wells that penetrate the base of useable quality water.[10] Accordingly, the drilling or operation of a disposal well requires a permit issued by the Railroad Commission.[11] Thus, that the Railroad Commission issued a permit for the disposal well does not make the Lease a mineral lease subject to oil and gas law.

The Lease in this case was a salt water disposal agreement. The Lease itself states that it "*shall in no way affect ownership of the oil, gas[,] or minerals in, on[,] or under the [lease premises].*"[12] This Lease is for the sole purpose of

---

ground . . . used to inject, transmit, or dispose of industrial and municipal waste or oil and gas waste into a subsurface stratum" or a well that had originally been drilled to produce oil and gas but now "is used to transmit, inject, or dispose of industrial and municipal waste or oil and gas waste into a subsurface stratum," or "a well used for the injection of any other fluid." *Id.* § 27.002(11) (West Supp. 2011).

[9]*Id.* § 27.002(10).

[10]*Id.* § 26.131 (West 2008).

[11]*Id.* § 27.031 (West 2008).

[12]*Cf. Irons v. Fort Worth Sand & Gravel Co.*, 260 S.W.2d 629, 630 (Tex. Civ. App.—Fort Worth 1953, writ ref'd n.r.e.) ("A mineral lease is a sale of an interest in realty.").

allowing Lessee to conduct its Business Activities." [Emphasis added.] "Business Activities" as defined in the Lease includes activities relating to the disposal and treatment of water produced from oil and gas wells, but it does not include recovery of any minerals, or indeed the recovery of any natural resource.[13] Because this Lease was not a lease for the production of minerals, the trial court correctly applied the law relating to leases generally, not the law governing oil and gas leases.[14]

Royalco next argues that Stockhome failed to prove as a matter of law that the entire term of the leasehold interest was not assigned and that the assignment did not convey all of the interest or estate conveyed in the Lease. Royalco contends that its agreement with Triad "contains no language that in any way limits the assignment of Triad's interest to Royalco for a period of time less than the entire term of the Lease." But the Services Agreement between Royalco and Triad included the following provision:

---

[13] *See Killam Oil Co. v. Bruni*, 806 S.W.2d 264, 267 (Tex. App.—San Antonio 1991, writ denied) (stating that "under Texas law . . . the term 'production' as used in oil and gas leases means the actual physical extraction of the mineral from the soil"); *Parker v. Standard Oil Co. of Kan.*, 250 S.W.2d 671, 680 (Tex. Civ. App.—Galveston 1952, writ ref'd n.r.e.) ("The intention of the parties to a mineral lease is that minerals shall be produced from the land lease."); *see also Minchen v. Fields*, 162 Tex. 73, 79, 345 S.W.2d 282, 287 (1961) (noting that "[t]he sole purpose of a mineral lease is to develop the property in order to produce the minerals") (quoting *Sheppard v. Stanolind Oil & Gas Co.*, 125 S.W.2d 643, 647 (Tex. Civ. App.—Austin 1939, writ ref'd)).

[14] *See Dick Props., LLC v. Paul H. Bowman Trust*, 221 P.3d 618, 621 (Kan. Ct. App. 2010) (acknowledging a difference between an oil and gas lease and a saltwater disposal agreement).

1. Term

(a) The original term of this Agreement shall begin on the date hereof and shall expire on the 20 (18) year anniversary of the date hereof, unless sooner terminated in accordance with the terms of this Agreement.

The Services Agreement then provides for automatic termination if Royalco restructures. The agreement is unclear whether it expires in twenty years, eighteen years, or in the year 2018. But although the Services Agreement arguably raises a question of fact about the exact length of time that the parties intended the agreement to operate, it clearly was not intended to continue in effect for the nearly ninety-nine years remaining on the Lease.

And of course, the word "term" as related to leases means more than just "time"; to constitute an assignment, the transfer instrument "must convey both the entire time for which the lease runs *and* the entire estate or interest conveyed by the original lease."[15] If the transferring party retains any reversionary interest in the transferred interest, the instrument is a sublease.[16] Under the terms of the Services Agreement, Triad retained a fifty percent interest in the Lease, and it

---

[15]*718 Assocs., Ltd. v. Sunwest N.O.P., Inc.*, 1 S.W.3d 355, 360 (Tex. App.—Waco 1999, pet. denied) (emphasis added) (citing *Davis v. Vidal*, 105 Tex. 444, 447, 151 S.W. 290, 292 (1912)).

[16]*Id.*; *see also Tawes v. Barnes*, 340 S.W.3d 419, 429 (Tex. 2011) (noting that in an assignment, "the original lessee retains no reversionary interest in the lease whatsoever"); *Amco Trust*, 317 S.W.2d at 50 ("In order to constitute an assignment, the lessee must part with his *entire* interest in all or part of the demised premises without retaining *any* reversionary interest") (emphasis added).

had the right to terminate the Services Agreement upon Royalco's default and failure to cure.[17] The Services Agreement did not assign the entire leasehold term, and, consequently, the agreement was a sublease.[18]

Royalco next argues that the Services Agreement was a valid partial assignment. Citing cases such as *Ridge Oil Co. v. Guinn Investments*,[19] Royalco asserts that Texas law unquestionably allows partial assignments "of oil and gas leasehold estates like the one at issue in this case." As we have stated, the Lease is not a mineral lease, and the case law cited by Royalco is therefore inapplicable.

Royalco then argues that Stockhome failed to conclusively establish that it properly terminated Royalco's interest in the Lease. Royalco's argument under this section of its brief is based on its assertion that its agreement with Triad was an assignment, not a sublease. Accordingly, we overrule this portion of Royalco's argument.

Finally, Royalco makes two arguments relating to affirmative defenses it raised in response to Stockhome's summary judgment motion. Royalco first asserts that the trial court erred by granting summary judgment because a fact

---

[17] *See Jones v. El Paso Natural Gas Prods. Co.*, 391 S.W.2d 748, 752 (Tex. Civ. App.—Austin 1965, writ ref'd n.r.e.) (holding that inclusion in instruments of the right to terminate the tenancy on the breach of a covenant by the transferee made the instruments subleases and not assignments).

[18] *See Amco Trust*, 317 S.W.2d at 50.

[19] 148 S.W.3d 143, 147 (Tex. 2004).

issue exists on the affirmative defense of estoppel by contract. In the two sentences of this part of its brief, Royalco argues that the Lease authorized Triad to partially assign up to fifty percent of its interest under the Lease and that "Stockhome's agreement to such assignment, at a minimum, creates a material facts issue as to whether [estoppel by contract] precludes Stockhome from denying Royalco's assigned interest."

Estoppel by contract is a doctrine "whereby a party is bound by the terms of his own contract . . . until it is set aside by fraud, accident or mistake."[20] But Royalco points to no evidence that it raised in the trial court that Stockhome did not abide by the terms of the Lease. The Lease states that Triad does not have the right to "sell more than 50% to assign or sublet [i]ts interest in this Lease or the Premises" without Stockhome's consent. But this language does not convert the Services Agreement into an assignment,[21] and unless Triad made a valid assignment of its lease to Royalco, then Stockhome's termination of the Lease without notice to Royalco does not violate the terms of the Lease. As stated above, Stockhome and Royalco do not have privity of contract or of estate. Nothing in the record indicates that Stockhome was a party to a contract with Royalco. The doctrine of estoppel by contract therefore has no application here. We overrule Royalco's argument.

---

[20] *Mathews v. Sun Oil Co.*, 411 S.W.2d 561, 564 (Tex. Civ. App.—Amarillo 1966), *aff'd*, 425 S.W.2d 330 (Tex. 1968).

[21] *See Parr*, 659 S.W.2d at 884.

11

Royalco's last argument is that the trial court erred by granting summary judgment because equitable estoppel applies. It argues that "after being told about the Triad [a]ssignment, Stockhome accepted payments due under the Lease directly from Royalco and knowingly allowed Royalco to make valuable improvements to the [p]roperty."

Equitable estoppel is a doctrine by which a party, because of its voluntary conduct, is precluded from asserting rights it might otherwise have against another person who has relied on the party's conduct and "has been led thereby to change his position for the worse."[22] To establish equitable estoppel, a party must show (1) a false representation or concealment of material facts, (2) made with knowledge, actual or constructive, of those facts, (3) with the intention that it should be acted on, (4) to a party without knowledge, or the means of knowledge of those facts, (5) who detrimentally relied upon the misrepresentation.[23]

In its brief, Royalco fails to point out any false representation or concealment of material facts by Stockhome on which Royalco relied to its detriment. The Lease gave Triad the right to sell fifty percent of its interest to another party. In accordance with that provision, Triad executed the Services Agreement with Royalco. Royalco then made rental payments to Stockhome

---

[22]*Farmer v. Thompson*, 289 S.W.2d 351, 356 (Tex. Civ. App.—Fort Worth 1956, writ ref'd n.r.e.).

[23]*Argyle Indep. Sch. Dist. ex rel. Bd. of Trs. v. Wolf*, 234 S.W.3d 229, 241 (Tex. App.—Fort Worth 2007, no pet.).

and made improvements on the property, and Stockhome did not stop it from doing so. But none of these asserted facts show a misrepresentation or concealment of facts, much less any reliance by Royalco, and none of these facts show that Stockhome did not abide by the Lease terms.

To the extent that we can construe Royalco's brief to argue that Stockhome represented to Royalco that the provision in the Lease allowing for a fifty percent sale of interest by assignment or sublease allowed for a true assignment (as that term is used in landlord-tenant law) without Stockhome's consent, and assuming that this representation by Stockhome would support estoppel,[24] Royalco points to no evidence that Stockhome did so. Royalco points to no evidence, for example, that Stockhome misrepresented to Royalco that the Services Agreement agreement created privity of estate or contract between Royalco and Stockhome or that the Services Agreement gave Royalco the same rights under the Lease as Triad has, or even that Stockhome represented to Royalco that if Royalco improved the property, it would treat Royalco as a true assignee of the Lease rather than as a sublessee. Accordingly, we overrule this part of Royalco's argument, and, having overruled all of Royalco's arguments, we overrule its sole issue.

---

[24]*See Fina Supply, Inc. v. Abilene Nat'l Bank*, 726 S.W.2d 537, 540 (Tex. 1987) (noting that generally, "[a] representation as to the legal effect of a document is regarded as a statement of opinion rather than of fact").

**Conclusion**

Having overruled Royalco's sole issue, we affirm the trial court's judgment.[25]

LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MCCOY, JJ.

DELIVERED:  January 26, 2012

---

[25]On January 23, 2012, this court received Stockhome's suggestion of bankruptcy and motion to reinstate.  In that motion, Stockhome states that Royalco filed for bankruptcy on December 19, 2011, and that on January 19, 2012, the bankruptcy court granted Stockhome relief from the automatic stay for purposes of this appeal.  *See* 11 U.S.C. § 362(a) (2004 & Supp. 2011) (providing that when a defendant files for bankruptcy, all judicial proceedings against the defendant are automatically stayed).  Stockhome asks this court to reinstate this appeal.  Because this court never previously received notice of Royalco's bankruptcy filing, however, this appeal was never abated in accordance with the automatic stay.  We therefore dismiss this motion as moot.