**Opinion filed December 21, 2023**



## In The

# Eleventh Court of Appeals

_____

### No. 11-22-00124-CV

_____

## DARKHORSE WATER, LP, Appellant

## V.

## BIRCH OPERATIONS, INC. AND BIRCH WATERMANIA, LLC, Appellees

**On Appeal from the 118th District Court**
**Martin County, Texas**
**Trial Court Cause No. 7711**

### O P I N I O N

This appeal concerns a "SaltWater Reclamation, Treatment, Water Purchase and SaltWater Disposal Agreement" that Appellant, Darkhorse Water, LP, obtained from Billie Pat McKaskle[1] for her undivided twenty percent interest in a tract of real property in Martin County. We will refer to this agreement as the "Darkhorse

---

[1]All references to "McKaskle" in this opinion are to Billie Pat McKaskle.

Agreement." This appeal requires us to determine whether the Darkhouse Agreement conveys an ownership interest to Darkhorse sufficient to permit Darkhouse to bring an action to quiet title and a suit for an accounting. The trial court determined that Darkhorse did not have a sufficient interest under the Darkhorse Agreement to bring these causes of action. We reverse and remand.

*Background Facts*

McKaskle executed the Darkhorse Agreement on August 20, 2019, and it was recorded a few weeks later. Approximately three weeks prior to McKaskle's execution of the Darkhorse Agreement, she, along with Billy Theodore McKaskle, John McKaskle, Venita L. McKaskle and Mike McKaskle as executor of the Estate of Charles J. McKaskle executed a "Surface Lease Agreement" with Appellee Birch Watermania, LLC for the same tract of real property. We will refer to this agreement as the "Birch Agreement." The Birch Agreement was not recorded at the time of its execution. Approximately nineteen months later, in March 2021, Birch Watermania, LLC executed and recorded a memorandum of the Birch Agreement.

Darkhorse filed suit against Appellees Birch Operations, Inc. and Birch Watermania, LLC in July 2021. We will refer to Appellees collectively as "Birch." Darkhorse asserted that it and Birch claim leaseholds to the same surface estate by virtue of the Darkhorse Agreement and the Birch Agreement.

Darkhorse alleged that when McKaskle executed the Darkhorse Agreement, Darkhorse was unaware that McKaskle had previously executed the Birch Agreement. Darkhorse further alleged that, after McKaskle executed the Darkhorse Agreement, Birch drilled a large saltwater disposal well on the property. Darkhorse asserted claims against Birch to quiet title and for an accounting with respect to Birch's activities on the property.

Birch responded to Darkhorse's suit by filing a traditional motion for summary judgment. Birch based the motion on the contention that Darkhorse did

2

not possess either actual title or an ownership interest in the property by virtue of the Darkhorse Agreement in order to assert its claims to quiet title or for an accounting.

Darkhorse filed its own traditional motion for summary judgment. It asserted that it has superior title to McKaskle's undivided twenty percent interest in the property. In this regard, Darkhorse asserted that it had no prior notice of Birch's claim to McKaskle's interest, and that Darkhorse was a bona fide purchaser. The trial court granted Birch's motion for summary judgment and denied Darkhorse's competing motion for summary judgment.

*Analysis*

Darkhorse brings two issues challenging the trial court's grant of summary judgment in favor of Birch. We review the trial court's grant of summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). Summary judgment is proper when no genuine issues of material fact exist, and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). When the parties file competing summary judgment motions and the trial court grants one and denies the other, "we consider the summary judgment evidence presented by both sides, determine all questions presented, and if the trial court erred, render the judgment the trial court should have rendered." *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 583 (Tex. 2015).

The party moving for traditional summary judgment bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). To be entitled to a traditional summary judgment, a defendant must conclusively negate at least one essential element of the cause of action being asserted or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.

1997). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). If the movant initially establishes a right to summary judgment on the issues expressly presented in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

Darkhorse asserts in its first issue that the trial court erred by concluding that the Darkhorse Agreement did not convey a determinable fee interest to Darkhorse. The interpretation of an unambiguous contract is a question of law that we review de novo using well-settled contract-construction principles. *URI, Inc. v. Kleberg Cnty*, 543 S.W.3d 755, 763 (Tex. 2018) (citing *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 787 (Tex. 2017)). "[T]he parties are free to decide their contract's terms, and the law's 'strong public policy favoring freedom of contract' compels courts to 'respect and enforce' the terms on which the parties have agreed." *Endeavor Energy Res., L.P. v. Discovery Operating, Inc.*, 554 S.W.3d 586, 595 (Tex. 2018) (quoting *Phila. Indem. Ins. Co. v. White*, 490 S.W.3d 468, 471 (Tex. 2016)). Our duty is to ascertain the parties' intent as expressed within the contract's four corners. *Id.* "Parties are free to draft novel contractual terms that produce results some may consider odd; a court's duty is to give effect to the parties' intent as expressed in the contract's language." *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 220 (Tex. 2022) (citing *Burlington Res. Oil & Gas Co. LP v. Tex. Crude Energy, LLC*, 573 S.W.3d 198, 211 (Tex. 2019)).

"[T]he plaintiff in a quiet-title suit 'must prove, as a matter of law, that he has a right of ownership and that the adverse claim is a cloud on the title that equity will remove.'" *Brumley v. McDuff*, 616 S.W.3d 826, 835 (Tex. 2021) (quoting *Lance v. Robinson*, 543 S.W.3d 723, 739 (Tex. 2018)); *Haynes v. DOH Oil Co.*, 647 S.W.3d 793, 803 (Tex. App.—Eastland 2022, no pet.). Accordingly, we must determine if

4

McKaskle conveyed an ownership interest to Darkhorse under the terms of the Darkhorse Agreement.

Birch contends that the Darkhorse Agreement is simply a "a traditional occupancy lease" that does not convey any ownership interest. "A lease is '[a] contract by which a rightful possessor of real property conveys the right to use and occupy the property in exchange for consideration[.]'" *JBrice Holdings, L.L.C. v. Wilcrest Walk Townhomes Ass'n*, 644 S.W.3d 179, 186 (Tex. 2022) (quoting *Lease*, BLACK'S LAW DICTIONARY (11th ed. 2019)). The El Paso Court of Appeals addressed the difference between a sales contract and a lease in *Franklin v. Jackson*, 847 S.W.2d 306, 308 (Tex. App.—El Paso 1992, writ denied):

> A "sale" is defined as "[a] contract between two parties, called, respectively, the 'seller' (or vendor) and the 'buyer' (or purchaser), by which the former, in consideration of the payment or promise of payment of a certain price in money, transfers to the latter *the title and the possession* of property. . . . A contract whereby property is transferred from one person to another for a consideration of value, *implying the passing of the general and absolute title*, *as distinguished from a special interest falling short of complete ownership*." On the other hand, the word "lease" "means a contract by which one owning such property grants to another the right to possess, use and enjoy it *for a specified period of time in exchange for periodic payment of a stipulated price*, referred to as rent."

(emphasis in original) (internal citations omitted.) Thus, the distinguishing feature between a lease and a contract of sale is the passing of title. *See Franklin*, 847 S.W.2d at 308 (citing *Charles M. Stieff, Inc. v. City of San Antonio*, 111 S.W.2d 1086, 1090 (Tex. 1938)).

"In Texas, a typical oil and gas lease actually conveys the mineral estate (less those portions expressly reserved, such as royalty) as a determinable fee." *Luckel v. White*, 819 S.W.2d 459, 464 (Tex. 1991) (citing *Stephens County v. Mid–Kansas Oil & Gas Co.*, 254 S.W. 290, 295 (Tex. 1923)). "The term 'lease,' when used in

5

an oil and gas context, is a misnomer. The estate created by the oil and gas lease is not the same as those interests created under a 'lease' governed by the law of landlord and tenant." *See Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 525 (Tex. 1982).

As explained in *Natural Gas Pipeline Company of America v. Pool*:

> In Texas it has long been recognized that an oil and gas lease is not a "lease" in the traditional sense of a lease of the surface of real property. In a typical oil or gas lease, the lessor is a grantor and grants a fee simple determinable interest to the lessee, who is actually a grantee. Consequently, the lessee/grantee acquires ownership of all the minerals in place that the lessor/grantor owned and purported to lease, subject to the possibility of reverter in the lessor/grantor. The lessee's/grantee's interest is "determinable" because it may terminate and revert entirely to the lessor/grantor upon the occurrence of events that the lease specifies will cause termination of the estate. . . . When an oil and gas lease reserves only a royalty interest, the lessee acquires title to all of the oil and gas in place, and the lessor owns only a possibility of reverter and has the right to receive royalties.

124 S.W.3d 188, 192 (Tex. 2003) (internal citations omitted).

This appeal hinges on whether the Darkhorse Agreement is similar to an oil and gas lease whereby McKaskle conveyed an ownership interest to Darkhorse such that Darkhorse can bring a suit to quiet title, or whether it is akin to a "regular" lease of real property where no title passed.

Birch cites *Royalco Oil & Gas Corporation v. Stockhome Trading Corporation* for the proposition that the law governing oil and gas leases is inapplicable to a saltwater disposal agreement. 361 S.W.3d 725, 728–31 (Tex. App.—Fort Worth 2012, no pet.). The court concluded in *Royalco* that the law governing oil and gas leases was inapplicable because the agreement was not for the recovery of minerals from the property or for the production of minerals. *Id.* at 730–31. In that regard, the Fort Worth Court of Appeals noted that the lease in *Royalco* contained a provision stating that it "shall in no way affect ownership of the oil,

gas[,] or minerals in, on[,] or under the [lease premises]." *Id.* at 731. Thus, the court concluded that the lease was not a mineral lease. *Id.* at 730.

We disagree with the proposition that, under *Royalco*, a saltwater disposal agreement can never constitute the conveyance of an ownership interest as is the case with the typical oil and gas lease. As recognized in *Royalco*, the saltwater disposal agreement at issue contained an express provision to the effect that it did not affect ownership of the minerals in place. *Id.* at 731. By contrast, the Darkhorse Agreement does not contain a similar provision disclaiming a transfer of ownership.

An oil and gas lease conveys to the lessee ownership of the minerals in place. *Pool*, 124 S.W.3d at 192. Darkhorse does not contend that McKaskle conveyed ownership of the minerals in place by and through the Darkhorse Agreement. Instead, Darkhorse asserts that the Darkhorse Agreement conveys an ownership interest in another attribute of the property—the subsurface reservoir storage space or the "subsurface matrix." *See Humble Oil & Refin. Co. v. West*, 508 S.W.2d 812, 815 (Tex. 1974); 1 PATRICK H. MARTIN & BRUCE M. KRAMER, WILLIAMS & MEYERS, OIL & GAS LAW § 222 *Subsurface Storage and Disposal of Substances* (2023) (using the term "pore space").

Reservoir storage space is an attribute of the surface estate. *West*, 508 S.W.2d at 815; *see Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 48 (Tex. 2017) (citing *West*); *see also Emeny v. United States*, 412 F.2d 1319, 1323 (Ct. Cl. 1969) (applying Texas law to determine that geological structures beneath the surface that are suitable for underground storage of substances is the property of the surface owner). Texas courts have recognized that the owner of the surface estate can convey a determinable fee interest in the minerals that are considered to be a part of the surface estate. *See Cage Bros. v. Whiteman*, 163 S.W.2d 638, 641 (Tex. [Comm'n App.] 1942) (addressing a sand and gravel lease); *Weed v. Brazos Elec.*

7

*Power Coop., Inc.*, 574 S.W.2d 570, 573–76 (Tex. App.—San Antonio 1978, writ ref'd n.r.e.) (addressing a coal and lignite lease).

The holdings in *Whiteman* and *Weed* were based on an application of *Stephens County*, the seminal case declaring that a typical oil and gas lease constitutes the conveyance of a determinable fee interest. *Whiteman*, 163 S.W.3d at 641; *Weed*, 574 S.W.2d at 574; *see Stephens County*, 254 S.W. at 295. *Stephens County* was a tax case that required a determination of whether the interests conveyed by an oil and gas lease were "independently taxable." 254 S.W. at 291. The Texas Supreme Court answered the tax question in the affirmative based upon its determination that the subject matter of the contract was the oil and gas in place; the land was leased for the purpose of prospecting for, producing, and marketing the minerals and for no other purpose other than the specified mineral exploration and production; the lessor was granted the full and exclusive authority to enter upon the lands and to conduct all necessary drilling and marketing operations; the lessors were divested of the right to either possess, use, or dispose of the gas or oil place in the lands as soon as the instrument was executed; and the lease was to continue in full force as long as gas or oil was produced in paying quantities and thus "might endure forever." *Id.* at 291–95.

Darkhorse asserts that the express terms of the Darkhorse Agreement have many of the same attributes that are in common with the traits of a typical oil and gas lease that make it a grant of a determinable fee interest. Darkhorse cites the analysis recently used by a federal magistrate judge to support its contention. *See Elmen Holdings, LLC v. Martin Marietta Materials Inc.,* No. 4:19CV3293, 2022 WL 1546716 (S.D. Tex. Apr. 28, 2022), report and recommendation adopted, No. 4:19-CV-3293, 2022 WL 1540426 (S.D. Tex. May 16, 2022). *Elmen Holdings* involved a gravel lease. *Id.* at *2. The magistrate in *Elmen Holdings* noted that under *Stephens County,* the form of an instrument does not affect the interest

conveyed by the instrument. *Id.* at *4. Relying upon *Stephens County* and its progeny, the magistrate determined that the gravel lease conveyed a fee simple determinable interest in sand and gravel rather than constituting a traditional occupancy lease. *Id.* at *2–4. As stated by the magistrate:

> [U]nder Texas law, by executing the Gravel Lease the Minarciks as the original Lessor granted to Lessee the exclusive [ ] right to produce sand and gravel from the property for an indefinite amount of time which created a fee simple determinable interest in those minerals, as opposed to a tenancy at will.

*Id.* at *4. Thus, the gravel lease in *Elmen Holdings* was "not simply the right to enter and occupy the property for an indefinite term." *Id.* at *5.

Darkhorse notes that in the Darkhorse Agreement, McKaskle "GRANT[ED], LEASE[ED], and LET[]" to Darkhorse the exclusive right to do the following acts on the property:

> 1) to drill for, produce, treat, reclaim and transport water from the property for commercial sale to third parties;
>
> 2) to utilize the property for disposal of salt water and other waste produced from oil and gas leases operated by Darkhorse or other third parties;
>
> 3) to drill and equip brine wells, fresh-water wells or saltwater disposal wells; to install water production facilities;
>
> 4) to use and operate the facilities to reclaim or treat waste water, produce brine water and fresh water;
>
> 5) to construct such pipelines and/or flowlines above or below ground to transport produced water from wells or facilities to water sales delivery point; and
>
> 6) to construct roads, electric lines, and communication lines across the property as necessary or convenient to Darkhorse for enjoyment of any of the conferred rights.

Darkhorse asserts that these enumerated purposes in the Darkhorse Agreement conferred unfettered, exclusive rights to the property to Darkhorse that constituted the transfer of an ownership interest to Darkhorse. Darkhorse also points out that the consideration for the Darkhorse Agreement was the payment of royalties to McKaskle based upon a percentage of amounts received by Darkhorse for the sale of produced water, the disposal of waste water into the reservoir storage space, and the sale of oil/skim oil from the property.

Darkhorse further notes that the Darkhorse Agreement provided for an initial five-year term, and that it would continue "as long thereafter . . . as . . . actual operations are being conducted on the Property for the drilling of Wells, construction of the Facilities, production of Produced Water or the treatment and/or disposal of Waste Water[.]" This provision is similar to the typical habendum clause found in an oil and gas lease. *See BP Am. Prod. Co. v. Red Deer Res., LLC*, 526 S.W.3d 389, 394 (Tex. 2017) ("A typical habendum clause provides that the lease will remain in force during a fixed primary term and 'as long thereafter as oil, gas or other minerals is produced' during the secondary term."). We further note that the Darkhorse Agreement also contains savings clauses for "cessation of operations" and force majeure similar to the typical oil and gas lease. *See id.*

As we noted above, the federal magistrate in *Elmen Holdings* determined that the gravel lease at issue was "not simply the right to enter and occupy the property for an indefinite term."[2] 2022 WL 1546716 at \*5. This observation addressed the subject matter of the gravel lease and whether it was capable of being conveyed as a determinable fee interest. By definition, the right conveyed in a traditional occupancy lease is the right to use and occupy property. *See JBrice Holdings,*

---

[2]As we noted in *Providence Land Services, LLC v. Jones*, a lease for an indefinite term is a tenancy at will. 353 S.W.3d 538, 542 (Tex. App.—Eastland 2011, no pet.).

10

*L.L.C.*, 644 S.W.3d at 186. Birch relies on *JBrice Holdings* to assert that the Darkhorse Agreement "merely grants Darkhorse the right to use and occupy the property for certain enumerated purposes." Birch's contention is misplaced because McKaskle conveyed more than the right to use and occupy the property.

As noted in *Stephens County*, the subject matter of the oil and gas lease, and thus, the thing conveyed in an oil and gas lease is the minerals in place. 254 S.W. at 291. In *Whiteman*, the thing conveyed was the sand and gravel in place. 163 S.W.2d at 641. In *Weed*, the thing conveyed was coal and lignite. 574 S.W.2d at 573–76. In the Darkhorse Agreement, the subject matter of the agreement and thus the thing conveyed is reservoir storage space, an attribute of the surface estate that is capable of being consumed and depleted by the disposal of saltwater just like oil, gas, sand, gravel, coal, and lignite may be extracted from the property.

By virtue of the Darkhorse Agreement, the exclusive ownership of McKaskle's undivided interest in the reservoir storage space is vested in Darkhorse during the continuance of the agreement for the purpose of saltwater disposal. *See Stephens County*, 254 S.W. at 294 (citing *Wolfe County v. Beckett*, 127 Ky. 252, 105 S.W. 447, 17 L. R. A. (N. S.) 689). Because of its habendum clause, the Darkhorse Agreement "might endure forever." *Id.* at 295. Thus, under the factors identified by the Texas Supreme Court in *Stephens County*, the attributes of the Darkhorse Agreement render it a conveyance by McKaskle to Darkhorse of a determinable fee interest in the property's reservoir storage space. Accordingly, Darkhorse has a sufficient property interest under the Darkhorse Agreement to bring an action to quiet title, and the trial court erred by granting Birch's motion for summary judgment on Darkhorse's suit to quiet title. We partially sustain Darkhorse's first issue to the extent that it seeks a determination that it possesses a fee determinable interest under the Darkhorse Agreement and that it can bring an action to quiet title.

Darkhorse additionally requests that we render judgment in its favor on its suit to quiet title. We decline to do so. Darkhorse's claim to quiet title is based on its claim that it that had no notice of the Birch Agreement. A bona fide purchaser is one who acquires property in good faith, for value, and without notice, constructive or actual, of any third-party claim or interest. *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001). "[A] bona fide purchaser prevails over a holder of a prior unrecorded deed or other unrecorded interest in the same property." *Noble Mortg. & Invs., LLC v. D & M Vision Invs., LLC*, 340 S.W.3d 65, 75 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Madison*, 39 S.W.3d at 606).

A person claiming title under a subsequent conveyance has the burden of proof to show that he was a subsequent bona fide purchaser for value without notice. *Bellaire Kirkpatrick Joint Venture v. Loots*, 826 S.W.2d 205, 209 (Tex. App.—Fort Worth 1992, writ denied) (citing *Ryle v. Davidson*, 115 S.W. 28, 29 (Tex. 1909)); *Phillips v. Latham*, 523 S.W.2d 19, 24 (Tex. App.—Dallas 1975, writ ref'd n.r.e.) (noting the general rule that one claiming to be a bona fide purchaser has the burden of proof on that issue). Darkhorse has not met its burden to establish as a matter of law that it was a bona fide purchaser. Accordingly, we overrule Darkhorse's first issue in part to the extent it asks us to render judgment on its claim to quiet title.

In its second issue, Darkhorse asserts that the trial court erred by granting summary judgment against it on its suit for an accounting. Our disposition of the title question presented by Darkhorse's first issue is partially dispositive of its second issue. Because McKaskle conveyed a fee determinable interest to Darkhorse by virtue of the Darkhorse Agreement, the trial court erred in granting Birch's motion for summary judgment on Darkhorse's claim for accounting, and we sustain Darkhorse's second issue to this extent. However, as is the case with Darkhorse's suit to quiet title, a remand is necessary to resolve Darkhorse's claim for an accounting because it is also dependent on Darkhorse's claim of being a bona fide

12

purchaser.  Accordingly, we deny in part Darkhorse's second issue to the extent that it asks us to render judgment on its suit for an accounting.

*This Court's Ruling*

We reverse the trial court's Order on the Parties' Cross-Motions for Summary Judgment wherein it ordered that Darkhorse Water, LP take nothing on its claims against Birch Operations, Inc. and Birch Watermania, LLC.  We render judgment that Billie Pat McKaskle conveyed a fee determinable interest to Darkhorse Water, LP in the Darkhorse Agreement.  This cause is remanded for further proceedings consistent with this opinion.


JOHN M. BAILEY

CHIEF JUSTICE


December 21, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.